

# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **MARY MCCLENDON,** | ) |
| | ) **WD86885** |
| Appellant, | ) |
| **v.** | ) **OPINION FILED:** |
| | ) |
| **MISSOURI COMMISSION ON** | ) **April 29, 2025** |
| **HUMAN RIGHTS,** | ) |
| | ) |
| Respondent. | ) |
| | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Sarah Anne Castle, Judge**

**Before Special Division: W. Douglas Thomson, Presiding Judge,**
**Thomas N. Chapman, Judge, and Zel M. Fischer Special, Judge**

Mary McClendon ("McClendon") appeals the judgment of the Circuit Court of

Jackson County which granted a motion to dismiss filed by the Missouri Commission on

Human Rights (the "Commission") on McClendon's two-count petition that sought

damages from the Commission under the Missouri Human Rights Act (the "MHRA").

The trial court determined (1) that McClendon failed to state a claim for which relief can

be granted on her claim of aiding/abetting under section 213.070.1(1),[1] and (2) that McClendon failed to state a claim for retaliation under section 213.070.1(2). In two points on appeal, McClendon argues that the trial court erred in these determinations. The judgment is affirmed.

### Background[2]

In July of 2023, McClendon filed an amended petition seeking damages from the Commission due to the Commission's delay in issuing a right to sue notice on McClendon's prior charge of discrimination against her former employer. In two counts, McClendon asserted that the Commission had engaged in the unlawful discriminatory practices of aiding/abetting and retaliation pursuant to section 213.070.1(1)-(2). McClendon alleged that the Commission employs more than six people and is an "employer" within the meaning of the MHRA pursuant to section 213.010(8) and that the Commission's sovereign immunity had been waived for the claims brought by McClendon.

McClendon alleged that, on February 15, 2021, she dually filed a charge of discrimination with the Commission and the Equal Employment Opportunity

---

[1] Unless otherwise indicated, statutory references are to RSMo 2016, as updated through the 2018 cumulative supplement.

[2] "When considering whether a petition fails to state a claim on which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *Matthews v. Harley-Davidson*, 685 S.W.3d 360, 366 (Mo. banc 2024). The background portion of this opinion is written in light of this principle without intending to suggest whether or not any particular allegation is true.

Commission ("EEOC"). The charge was assigned to the Commission pursuant to a work-sharing agreement. The charge alleged disability discrimination under the MHRA against McClendon's former employer.

McClendon's petition alleged that the Commission was subject to the ministerial duty to issue a right to sue notice if the complainant requests a right to sue notice and the Commission's investigation was ongoing after 180 days have passed.[3] *See* § 213.111.1.

McClendon alleged that she requested a right to sue notice on September 28, 2021 (225 days after filing her charge of discrimination against her former employer). On February 25, 2022, McClendon followed up with the Commission regarding the right to sue notice. In response, a Unit Supervisor for the Commission indicated that the Commission was expecting documents from the respondent in the case (McClendon's former employer) and that the Commission had made a determination regarding its jurisdiction. The Unit Supervisor thanked McClendon for following up and for her patience.

On March 1, 2022, McClendon requested clarification on when the right to sue notice would be issued. The Unit Supervisor responded:

> Because of the incongruity between our caseloads and very limited staffing, we generally refrain from specific estimates unless there is a statute of limitations or other pressing legal issue involved. If the documents arrive as currently expected and do not raise any jurisdictional issues we need to give you an opportunity to address, however, then ***our aim would be to issue the notice by April 30, 2022***; and if we do not have staff availability

---

[3] McClendon's petition cited to multiple cases for this proposition, including *Najib v. Missouri Comm'n on Human Rights*, 645 S.W.3d 528, 546 (Mo. App. W.D. 2022).

or encounter technical issues, I anticipated [*sic*] the closure will be just as soon thereafter as possible. We appreciate your patience as a few people work a large number of cases. A new case tracking system from EEOC for FEPAs, such as MCHR, has slowed our closing of cases as well, so I apologize that we are not able to be more specific, but we do have this case targeted for closure and ***will let you know if we have any jurisdictional questions as we work diligently to process your request.***

(emphases added by McClendon in her petition). McClendon alleged that, in the span of a week, the Commission had backtracked on its jurisdictional determination and added a month to the time estimated to issue the right to sue notice.

McClendon did not receive a right to sue notice on April 30, 2022. McClendon then filed a Petition for Preliminary and Permanent Writs of Mandamus in the Jackson County Circuit Court. The Commission was served with a preliminary writ of mandamus on May 13, 2022, via service on a Deputy Director of the Commission.

On June 10, 2022, the Commission issued a second "Notice that a Complaint has Been Filed" dated June 3, 2022. McClendon alleged that such notices acknowledge receipt of an initial charge of discrimination, and that one had previously been sent on February 23, 2021. Perplexed, McClendon inquired as to the issuance of a second notice. The Deputy Director responded: "***After you filed your petition***, it was noted that the seven Respondents named in the narrative section of the complaint form had not been served. Therefore, we served them. That was the notice that you received." (emphasis added by McClendon).

McClendon alleged that the Commission had the charge for nearly two years and had already claimed to have jurisdiction, and yet had not read the first page of the charge

4

which listed all respondents to the charge, and had not read the narrative portion of the charge which listed all respondents to the charge as well as all of their aliases. McClendon alleged alternatively that the Commission's conduct constituted retaliation for bringing the Commission's violation of the MHRA to the circuit court's attention.

On June 14, 2022, the Circuit Court of Jackson County issued a permanent writ of mandamus that required the Commission to immediately issue a right to sue notice. The Commission did not then issue a right to sue notice.

On July 6, 2022, McClendon filed a motion for a show cause order with the circuit court, requesting that the Commission be required to explain its failure to issue a right to sue notice.

On July 7, 2022 (over 500 days after McClendon filed a charge of discrimination against her former employer, and over three weeks after the Commission was ordered to issue a right to sue notice immediately), the Commission finally issued to McClendon a right to sue notice.

On June 23, 2022 (9 days after the circuit court had issued the permanent writ), McClendon filed a charge of discrimination with the Commission and the EEOC that alleged the Commission had engaged in the unlawful practices of aiding/abetting and retaliation – *i.e.*, the claims underlying this appeal.

The Commission issued McClendon a right to sue notice on her charge of discrimination on December 21, 2022. On December 29, 2022, the Commission sent a

letter vacating the right to sue notice. On January 3, 2023, the Commission issued a second right to sue notice.

McClendon then filed the action underlying this appeal. Count I of McClendon's petition asserted a claim of aiding/abetting under section 213.070.1(1). McClendon alleged that she suffered an act of discrimination based on her disability, and that the Commission offered affirmative aid, assistance, or encouragement to the perpetrators of that adverse act by refusing to follow statutory requirements so that McClendon could pursue her claims against her former employer, by providing financial and logistical assistance to the employer in avoiding answering for its adverse actions, by failing to investigate McClendon's claims to any degree, by refusing to even read McClendon's charge of discrimination, and by delaying McClendon's pursuit of justice.

Regarding Count II, McClendon alleged that she engaged in activity protected by the MHRA by filing a charge of discrimination against her former employer and by requesting that the Commission process that charge according to the law. McClendon alleged that the Commission subjected her to adverse actions including delaying the issuance of the right to sue notice, lying about the status of her claims, attempting to "restart" the clock after McClendon filed a petition for a writ of mandamus that sought to force the Commission to obey the law, and by refusing to issue a right to sue notice even when directed to do so by the circuit court. McClendon alleged that her protected activity was the motivating factor in the Commission's adverse actions toward her.

6

McClendon alleged that the Commission's unlawful conduct caused her irreparable injury including past and future pecuniary issues, delay and associated economic losses, increased legal fees – including having to file and pursue a writ of mandamus, and then to enforce that writ after it was issued – as well as emotional pain and suffering. McClendon alleged that, as a result of the Commission's delay, she was stopped from filing a lawsuit and pursuing her claims for nearly a year; that she was forced to borrow money and incurred interest on such loans; that she was forced to deal with a traumatic event in her life for nearly a year longer than she would have been absent the Commission's actions; and that her former employer received the benefit of the Commission's unlawful delay.

In its motion to dismiss, the Commission argued that McClendon failed to plead facts demonstrating a waiver of sovereign immunity, and that McClendon failed to allege facts sufficient to support her claims of aiding/abetting and retaliation.

At some point, the trial court requested supplemental briefing on the issue of what constitutes aiding/abetting for a claim brought under section 213.070.1. The parties briefed the trial court on this issue. Thereafter, a hearing was held on the motion to dismiss.

On January 5, 2024, the trial court entered an order granting the Commission's motion to dismiss and dismissing McClendon's claims without prejudice. The trial court found that McClendon failed to state a claim for aiding/abetting and that McClendon failed to state a claim for retaliation.

7

McClendon then moved for entry of final judgment for purposes of appeal. Thereafter, the trial court granted McClendon's motion and entered a judgment of dismissal, which again determined that McClendon had failed to state a claim for aiding/abetting and had failed to state a claim for retaliation.

McClendon now appeals to this court.[4]

## Standard of Review

We review the trial court's grant of a motion to dismiss *de novo*. *Matthews v. Harley-Davidson*, 685 S.W.3d 360, 365 (Mo. banc 2024). "A motion to dismiss for failure to state a claim on which relief can be granted is solely a test of the adequacy of the petition." *Id.* at 366 (citation omitted). "When considering whether a petition fails to state a claim on which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *Id.* (citation omitted). We review the petition "to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Id.* (citation omitted). "If the dismissal is justified on any

_____

[4] A dismissal without prejudice raises questions regarding whether the dismissal is appealable. *See Lee v. Dep't of Transp.*, 618 S.W.3d 258, 262 (Mo. App. W.D. 2021). An appeal from a dismissal without prejudice "can be taken where the dismissal has the practical effect of terminating the litigation in the form cast or in the plaintiff's chosen forum." *Id.* (citation omitted). "A dismissal without prejudice for failure to state a claim, when the plaintiff elects to stand on the dismissed petition and not plead further, amounts to a determination that the plaintiff has no action." *Id.* (internal quotation and citation omitted). In such cases, a judgment of dismissal without prejudice "constitutes an adjudication on the merits and is appealable." *Id.* (citation omitted). In this matter, McClendon has elected to stand on the dismissed petition rather than plead further. Based on the foregoing principles, the fact that the dismissal was without prejudice is not an impediment to McClendon's appeal.

ground included in the motion to dismiss, the circuit court's judgment will be affirmed."

*Cope v. Parson*, 570 S.W.3d 579, 583 (Mo. banc 2019) (citation omitted).

## Analysis[5]

McClendon raises two points on appeal. In her first point, McClendon argues that

the trial court erred in determining that she failed to state a claim for aiding/abetting

under section 213.070.1(1). In her second point, McClendon argues that the trial court

---

[5] The Commission argues that McClendon's statement of facts is argumentative in violation of Rule 84.04 and that we are therefore deprived of jurisdiction. We disagree. First, the Commission incorrectly characterizes the issue as jurisdictional. In support of the proposition that this court is deprived of jurisdiction due to Rule 84.04 violations, the Commission cited to *Surgery Ctr. Partners, LLC v. Mondelez Int'l, Inc.*, 647 S.W.3d 38, 45 (Mo. App. E.D. 2022), a clearly inapposite case in which the eastern district of our court "decline[d] to exercise [its] discretion" to review an appellant's arguments due to the appellant's blatant disregard of numerous briefing requirements. *Id.* at 44-45. The Commission nevertheless mischaracterizes the issue as jurisdictional. Furthermore, we do not find McClendon's statement of facts to be improper. McClendon's statement of facts accurately describes the allegations in McClendon's petition. Given that we accept these allegations as true and construe them favorably to the pleader given the procedural posture of this case, we find no issue with McClendon's statement of facts that accurately informed this Court of the factual information set forth in the petition underlying this appeal. The Commission never actually identifies a particular passage where McClendon makes an argument in her statement of facts. The Commission nevertheless argues that McClendon's statement of facts included "inflammatory language" such as: "Respondent repeatedly refused," and "Respondent offered conflicting justifications." However, both of those statements accurately represent the allegations as there were multiple allegations that the Commission refused to obey the law, and there were allegations that the Commission offered conflicting justifications for its actions.

The Commission also argues that McClendon's jurisdictional statement is deficient because it contains no facts establishing jurisdiction. The Commission's argument is clearly wrong, if not frivolous. McClendon's jurisdictional statement indicates the court from which the appeal originated, why that court is within our territorial jurisdiction, the claims raised in the petition before the trial court, the nature of the judgment appealed, the day that the judgment was entered, the day the judgment became final, the day McClendon filed her notice of appeal, the day McClendon's notice of appeal would be deemed filed, the issues on appeal, the constitutional provision that vests this court with jurisdiction, and a statement that the case is not one that would fall within the exclusive jurisdiction of the Missouri Supreme Court. We deny the Commission's request to dismiss this appeal.

erred in determining that she failed to state a claim for retaliation under section 213.070.1(2). Before addressing McClendon's points on appeal, we first provide background on the MHRA.

The MHRA prohibits particular discriminatory practices. *See, e.g.*, §§ 213.040, 213.055, 213.065, 213.070. The Commission is an agency created by the General Assembly and tasked with certain powers and duties including the power to seek to eliminate and prevent discrimination based on certain classifications. §§ 213.020.1-2, 213.030. Generally, a person claiming to be aggrieved by an unlawful discriminatory practice under the MHRA may file a complaint with the Commission pursuant to section 213.075. For certain unlawful discriminatory practices, where the Commission has not completed its administrative processing of the complaint within 180 days, and where the complainant has requested in writing, the Commission must issue to the complainant a right to sue notice, which is "a letter indicating his or her right to bring a civil action within ninety days of such notice against the respondent named in the complaint." § 213.111.1; *see also Najib v. Missouri Comm'n on Human Rights*, 645 S.W.3d 528, 545 (Mo. App. W.D. 2022). Such a civil action may then be brought as provided in section 213.111.1. Upon issuance of the notice, the Commission must terminate its proceedings relating to the complaint. § 213.111.1. The obvious purpose of the private enforcement action created by the General Assembly in section 213.111.1 is to allow a complainant an alternative means to seek relief from the unlawful practices prohibited by the MHRA – *i.e.*, to allow the complainant to elect to forego the administrative remedies available

10

through the Commission and to pursue a privately enforceable avenue to a remedy for the unlawful practices alleged where the Commission has not completed its administrative processing of the complaint in 180 days. *See Najib*, 645 S.W.3d at 540-41, 547.

### Point One

In her first point, McClendon argues that the trial court erred in determining that she had failed to state a claim for which relief can be granted on her claim of aiding/abetting under section 213.070.1. We disagree.

Whether McClendon's petition stated a claim for aiding/abetting depends on whether McClendon sufficiently pleaded facts that meet the elements of such a claim. *See Matthews*, 685 S.W.3d at 366.

It is an unlawful discriminatory practice for an employer, employment agency, labor organization, or place of public accommodation to "aid, abet, incite, compel, or coerce the commission of acts prohibited under [Chapter 213, RSMo] or to attempt to do so[.]" § 213.070.1(1). Section 213.010(8) provides a definition for "employer" when that term is used in Chapter 213, RSMo. It provides that "employer" "shall include the state, or any political or civil subdivision thereof" or any person employing six or more persons within the state, subject to certain exclusions. *See* § 213.010(8).

In *Matthews*, the Missouri Supreme Court indicated that it had not previously set forth the ultimate facts necessary to support an aiding/abetting claim under section 213.070.1(1). *Matthews*, 685 S.W.3d at 369. The *Matthews* Court then indicated that it found the following to be persuasive:

11

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself. The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other. To determine whether a defendant provided substantial encouragement or assistance, the Court considers the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other, and his state of mind.

*Id.* at 369 (internal quotations, citations, brackets, and ellipses omitted). "Employment discrimination cases are inherently fact-based and often depend on inferences rather than on direct evidence." *Id.* at 369-70 (internal quotations and citation omitted).

McClendon's claim of aiding/abetting was based on her allegations that the Commission aided her former employer through the Commission's intentional delay in refusing to issue a right to sue letter as required by statute. McClendon alleged that the Commission's wrongful conduct prevented McClendon from pursuing her claims for nearly a year and forced her to borrow money and incur interest. McClendon alleged that her former employer received the benefit of the Commission's delay, which had the effect of preventing the filing of a lawsuit and "starving out" a wrongfully discharged employee due to the dire circumstances of the victim of discrimination.

Having reviewed the considerations set forth in *Matthews*, we find that, as a matter of law, the Commission's actions as alleged fail to constitute substantial encouragement or assistance as required to state a claim for aiding/abetting. In this matter, there are no allegations indicating that the Commission had any involvement with the unlawful practice allegedly committed by McClendon's former employer. Rather, the allegations

12

indicate that the Commission's role in the commission of that practice was in its processing of the charge of discrimination filed by McClendon after the unlawful practice alleged had already occurred. There are no allegations that the Commission had a relationship with McClendon's former employer outside of investigating and processing McClendon's charge of discrimination. There are no allegations of the specific act encouraged. Rather, McClendon's claims are based on a theory that the Commission provided assistance or encouragement long after the completion of the allegedly unlawful act.[6] There are no allegations that the Commission's delay ultimately extinguished McClendon's ability to pursue a private enforcement action against her former employer. Even accepting the allegations in McClendon's petition as true, McClendon failed to allege facts sufficient to meet the requirement that the Commission provide substantial encouragement or assistance to the alleged perpetrator of the unlawful act (McClendon's former employer).

Point one is denied.

## Point Two

In her second point, McClendon argues that the trial court erred in determining that she failed to state a claim for retaliation under section 213.070.1(2). We disagree.

---

[6] Although it is unnecessary to decide whether post hoc assistance can *ever* constitute aiding/abetting under section 213.070.1(1), it is clear from *Matthews* that the lack of presence at the time of the unlawful act tends to suggest the absence of substantial encouragement or assistance. *See Matthews*, 685 S.W.3d at 369.

13

It is an unlawful discriminatory practice for an employer, employment agency, labor organization, or place of public accommodation to "retaliate or discriminate in any manner against any other person because such person" has engaged in certain protected activities, including opposing any practice prohibited by the MHRA, filing a complaint, or participating in proceedings under the MHRA. § 213.070.1(2). As interpreted by Missouri courts, in order to establish a claim for retaliation, McClendon is required to establish (1) that she participated in protected activity, (2) that the Commission took adverse action against her; and (3) a sufficient causal relationship existed between her protected activity and the adverse action. *See Eivins v. Missouri Dep't of Corr.*, 636 S.W.3d 155, 180 (Mo. App. W.D. 2021). Regarding the adverse action requirement, a plaintiff must show that he or she suffers damages as a direct result of the retaliation. *Id.* Although section 213.070 was drafted broadly to prohibit retaliation "in any manner," the retaliation must have an "adverse impact on the plaintiff before it becomes actionable." *Kader v. Bd. of Regents of Harris-Stowe State Univ.*, 565 S.W.3d 182, 189-90 (Mo. banc 2019) (citation omitted). "An action is not adverse simply because it is upsetting or disappointing" to the complainant. *See id.* at 190.

In this matter, McClendon asserted that the Commission subjected her to adverse actions in wrongfully delaying the issuance of a right to sue notice that she needed to pursue her claims, requiring her to file for a writ of mandamus, and then refusing to issue a right to sue notice promptly even after ordered to do so by the circuit court. McClendon alleged that her protected activity (filing a charge of discrimination and

14

requesting that it be processed as unequivocally required by the MHRA) was the motivating factor in the Commission's actions. McClendon asserted that she suffered damage as a result of the Commission's unlawful conduct in that she was prevented from filing a lawsuit and pursuing her claims for nearly a year; was forced to borrow money and incurred interest; was forced to incur increased legal fees, including having to file and pursue a writ of mandamus and then seek to enforce the writ; and was left without a remedy for a traumatic event for nearly a year longer than she would have been in the absence of the Commission's actions.

McClendon is attempting to sue the Commission for retaliation based on allegations that the Commission took adverse action against her because she filed a complaint with the Commission. This matter is unusual in that section 213.075.1 instructs persons claiming to be aggrieved by an unlawful discriminatory practice to file a complaint with the Commission. In other words, McClendon seeks to sue the administrative agency that processes MHRA complaints for retaliating against her **because** she filed an MHRA complaint with the agency that processes such complaints.

We recognize that the MHRA does not categorize the Commission separately from other employers. *See* §§ 213.010(8), 213.070.1; *see also Howard v. City of Kansas City*, 332 S.W.3d 772, 788 (Mo. banc 2011) (recognizing that the inclusion of the state and its subdivisions in the definition of employer under section 213.010 indicates that "the legislature intended to treat the state and its subdivisions in the same manner as it treats other employers"). However, it is inescapable that the Commission holds a unique place

15

under the MHRA in that the Commission is the agency tasked with processing complaints under the MHRA. *See* § 213.030.1. Regarding the Commission's role in processing charges of discrimination, Missouri courts have long recognized that the Commission's resources are very limited, and that the Commission will sometimes fail to discharge its statutory duties in a thorough manner. *See Igoe v. Dep't of Lab. & Indus. Rels. of Mo.*, 152 S.W.3d 284, 287 (Mo. banc 2005). In recognizing that the Commission's performance of its statutory duties may sometimes lack thoroughness or be subject to delays, Missouri courts have also recognized that the General Assembly has provided complainants an alternative avenue toward a remedy in order to preserve a complainant's rights under the MHRA where the Commission has not completed its administrative processing within 180 days. *See id.* at 287; *see also Najib*, 645 S.W.3d at 547; *State ex rel. Green v. Missouri Comm'n on Human Rights*, 648 S.W.3d 31, 41 (Mo. App. W.D. 2022) (citation omitted).

Where the Commission has issued a final decision, order, or finding, persons aggrieved may seek judicial review of such decisions, findings, and orders pursuant to section 213.085. This provision of judicial review generally indicates that the General Assembly would not contemplate that the Commission would be subjected to a private action for damages for the erroneous processing of complaints when such errors could be corrected through the judicial review process. When such corrections are necessary, extended periods of time often elapse throughout the judicial review process, such that

16

extended delays, although clearly intended to be rare, are occasionally tolerated under the MHRA.

We do recognize that the real complaint in McClendon's allegations is not merely that the Commission may have performed its responsibilities poorly or dragged its feet in processing McClendon's complaint (issues for which the private enforcement action is intended to provide an alternative avenue to a remedy for the discrimination underlying the complaint when the Commission fails to complete its processing within 180 days); but rather that, when McClendon sought to take matters into her own hands and pursue that alternative avenue toward a remedy as expressly provided under section 213.111.1, the Commission refused to act in a timely manner that would allow her to do so.

In assessing whether the Commission's delay in issuing a right to sue letter constituted an actionable wrong under section 213.070.1(2), it is necessary to consider whether the Commission's wrongful delay in issuance of the right to sue letter constituted an adverse action with an actionable adverse impact under the MHRA. *See Kader*, 565 S.W.3d at 189-90. Regarding this consideration, we find it significant that the defendant is the Commission – the agency that processes MHRA claims – and that the adverse action alleged is based on the Commission's actions with regard to a complaint that the Commission was processing. Although we recognize that the Commission's delay (as alleged in McClendon's petition) was not in compliance with the Commission's ministerial duty under section 213.111.1, the Commission did ultimately provide McClendon with a right to sue notice. There are no allegations that the Commission

17

extinguished McClendon's ability to pursue the remedies available in the private enforcement action pursuant to section 213.111.1. Thus, despite the delay, McClendon's right to pursue her claims of discrimination against her former employer was ultimately preserved. We also note that the adverse impact asserted by McClendon involved the dilatory effects of the Commission's conduct on her suit against her former employer rather than independent harms directly caused by the Commission.

Because there are no allegations that the Commission extinguished McClendon's ability to pursue a private enforcement action against her former employer pursuant to section 213.111.1, and because McClendon is not asserting a new independent harm as a direct result of the Commission's conduct, we find that, as a matter of law, McClendon has failed to state a claim for retaliation under section 213.070.1(2).

McClendon's second point is denied.[7]

---

[7] In concluding that the Commission's delay in issuance of a right to sue notice under the circumstances alleged in the petition does not constitute an actionable harm under the MHRA so as to give rise to an action for damages, we do not suggest that the Commission is free to circumvent the law. Other mechanisms are available to compel the Commission to perform the ministerial duties required of it by law. Circuit courts have authority to "issue and determine original remedial writs[.]" Mo. Const. Art. V, § 14. The writ of mandamus will compel an administrative body or officer to perform a ministerial duty that the administrative body or officer charged with such duty has refused to perform. *Furlong Companies v. City of Kansas City*, 189 S.W.3d 157, 165-66 (Mo. banc 2006) (citing *State ex rel. Phillip v. Pub. Sch. Ret. Sys.*, 262 S.W.2d 569, 574 (Mo. banc 1953)). Under Rule 94, circuit courts may control certain details of the proceedings as may be necessary to give effect to the remedy requested, *see* Rule 94.01, including the time within which the respondent is ordered to answer a preliminary order in mandamus. *See* Rule 94.05.

**Conclusion**

The judgment is affirmed.

_____
Thomas N. Chapman, Judge

All concur.